Moulton agt. Beecher.

## SUPREME COURT.

### Francis D. Moulton agt. Henry Ward Beecher.

*Venue — place of trial, how and when may be changed.*

A plaintiff may amend his complaint of course, within the time prescribed by section 172 of the Code for such purpose, changing the place of trial. But the exercise of such right, by the language of the statute authorizing it, *cannot prejudice proceedings already had.*

Where a notice of motion to change the place of trial had already been given by the defendant, the plaintiff, by an amendment of his complaint, sought to remove the cause from the locality originally designated in the complaint, thus seeking to prevent the court, upon the motion then noticed, from exercising its own independent judgment as to the place best fitted to try the action with impartiality to both parties:

*Held,* that the act of the plaintiff in making such change could not defeat the motion of which notice was given or the discretion of the court as to the proper place of trial. The motion cannot in any way be prejudiced by the amended complaint.

Where, as in this case, the parties concerned hold prominent positions, the matters involved having been continually discussed for a long period by the public press, and by nearly every individual in the community, and a long and exhaustive trial having been had against the same defendant, continuing six months, daily reported in the papers, and continually and feelingly discussed, such trial resulting in a disagreement of the jury:

*Held,* that the obtainment of a fair, impartial and intelligent jury in such county would be an impossibility, and a motion for a change of venue is fully justified.

A cause should not be tried in a locality the general sentiment of which one of the parties to the action has sought, by appeals through the public press, to control, and which he has himself selected as a place of trial.

The fairness of a trial should be above and beyond suspicion, and the court should not allow a trial by a jury of a vicinage, the general opinion and belief of which, upon the matters involved in such trial, either party has industriously, through newspapers, sought to form.

*N. Y. Chambers, September Term,* 1876.

Moulton agt. Beecher.

MOTION to change the place of trial from Kings county to some other, on the ground that a fair and impartial trial cannot be had therein.

*Messrs. Shearman, Vanderpoel & J. L. Hill,* for defendant and motion.

*Messrs. S. W. Fullerton & R. A. Pryor,* for plaintiff and opposed.

WESTBROOK, *J.* — This action is for malicious prosecution. The complaint charges the defendant with falsely and maliciously, and without probable cause, procuring the indictment of the plaintiff by a grand jury of Kings county for the publication of certain alleged criminal libels upon the defendant. It is conceded that the alleged libelous publication related to the well-known accusations of Mr. Theodore Tilton against the defendant, and that this trial will involve the same issue with that of *Tilton* agt. *Beecher,* which, though continued for several months, resulted in the disagreement of a jury in the city court of Brooklyn, and also with that which has so long agitated the public mind by discussions in the public papers, and by trial in ecclesiastical courts.

The place of trial originally designated in the complaint was the county of Kings, the locality in which both parties resided during the time of the alleged occurrence of the events to which the issues of the action relate, and in which they are charged to have transpired. When, however, notice of motion to change the place of trial from the county of Kings to one more remote from the residence of the parties was given, the plaintiff, by an amendment of his complaint, sought to remove it from the city of Brooklyn to the city of New York, as was, perhaps, his technical right to do, thus seeking to prevent the court, upon the motion then noticed, from exercising its own independent judgment as to the place

best fitted to try the action with impartiality and fairness to both parties.

As notice of the present motion had already been given when the amended complaint which seeks to change the place of trial was served, and as the Code (*sec.* 172), provides that such an amendment shall be without prejudice to the proceedings already had, it follows that the court must exercise its own judgment in the selection of a place of trial, and that the action of the plaintiff in making such change cannot defeat the motion of which notice was given, or the discretion of the court as to the proper place of such trial (*Toll* agt. *Cromwell*, 12 *How.*, 79). It is true that the plaintiff by the amendment of his complaint has exercised a legal technical right, but as such right, by the language of the statute authorizing it, cannot "prejudice * * * proceedings already had," it is not seen how the change made can have, on, the disposition of this motion, any other or greater effect than if, without the service of an amended complaint, the plaintiff in open court had — conceding the county of Kings not to be the proper place for trial — offered to consent to an order transferring it to the city of New York. If the amendment is to have a greater effect than this, the proceedings in the action are prejudiced thereby; for by those already had, the court was empowered to decide whether or not the county of Kings was a proper place for the trial of the action, and if not; what was the proper county for such trial, which right of judgment, fairly committed to the court by the proceedings in the action, is taken away if the amendment to the complaint is to have any other effect than that which has been stated. Whilst the letter, then, of the statute giving the right to amend is conceded, it can only be conceded in the very language thereof, and that requires us to judge and decide this motion upon the pleadings as they then stood and upon the place of trial as then fixed. Any other construction ignores plain words, and enables a party to divest a

Moulton agt. Beecher.

court of the discretion to fix the place of trial, having due regard to the administration of justice, with which it was fairly intrusted.

Treating this motion, then, as it stood when notice thereof was originally given, and which, by the action of the Brooklyn special term and the order to show cause, is now here to be heard, two questions are presented: 1. Can a fair and impartial trial be had in Kings county? And 2. If it cannot, to what county shall the place of trial be changed?

Apart from the positive testimony of many affidavits contained in the moving papers, showing that the condition of public feeling in the county of Kings is such as to make the obtainment of an impartial jury therein impossible, and the partial admission, at least, of the truth thereof, which the service of the amended complaint, designating the county of New York as the place of trial, implies, it is apparent, from the prominent positions of the parties concerned in the charges, the very wide and continued discussion of the matters involved by the public press for a period of over two years, a long and exhausting trial of the action of *Tilton* agt. *Beecher*, held in the city of Brooklyn, continuing six months, its proceedings reported day by day in the public press, read by every one, and continually and with feeling discussed, such trial resulting in the disagreement of the jury, and the various ecclesiastical investigations also duly chronicled by the press, that the obtainment of a fair, impartial and intelligent jury in the county of Kings would be an impossibility. In addition to this, a trial, had upon the very spot of the difficulties, surrounded by the warm and bitter partisans of both parties, whose feelings would be made known in the court room and elsewhere, and the comments of the press to be read by the jury, would be so influenced by outside surroundings and influences as to make the jurors sharers in those feelings and partisans in the struggle, rather than calm and impartial searchers for truth.

Manifestly then, to my mind, the trial should not take

place in the city of Brooklyn, and the motion for a change of the venue was fully justified. There is another reason, also, which is to me a very controlling one in determining to change the place of trial, and that is that the plaintiff has written, or caused to be written, from time to time, in the newspapers, very elaborate and carefully prepared communications to establish the alleged immoral conduct and life of the defendant. It is but fair to the plaintiff to assume that these articles were written and published for the express and only purpose of inducing the public to believe in the guilt of Mr. Beecher. To think otherwise, and to ascribe to the plaintiff no motive whatever in such publications, is to insult his intelligence by supposing that he would perform great labor and incur considerable expense for no purpose whatever. Many thousand copies of these papers were circulated in the cities of New York and Brooklyn, and it is but reasonable to believe that such communications have had more or less influence upon public opinion. If twelve intelligent men can be found in the county of Kings, who can, as jurors, try the issues in this action with freedom from previously formed opinions, then they exist in spite of the efforts of the plaintiff, who certainly, if he has not sought to influence the result of this particular action, has at least endeavored generally to mold public sentiment against the defendant in connection with the alleged transactions out of which this action springs. It does not become a party who has done this to say : " My efforts have been ineffectual and produced no effect." It certainly is not unjust to hold that a cause should not be tried in a locality the general sentiment of which one of the parties to the action has sought, by appeals through the public press, to control, and which he has himself selected as a place of trial. The fairness of a trial should be above and beyond suspicion, and no court should allow a trial by a jury of a vicinage the general opinion and belief of which, upon the matters involved in such trial, either party has industriously, through newspapers, sought to form. To do this would

simply encourage parties, in advance of actual trial, to create prejudice and bias, in the hope of benefit to follow from a legal investigation before men, some of whom, at least, might have obtained their views and judgments of a cause elsewhere than in the court room. The administration of justice should be subjected to no such hazard, and the party who is inconvenienced by a determination that it shall not be, can only blame the indiscretion which induced him to submit his case to the general public, with all possible art and skill, in advance of its legal presentation in the mode and manner established by law. The proper guarding of a trial by jury requires a change of the locality fixed by the plaintiff. If a fair and impartial one can be had in the locality selected by the plaintiff it is a contingency only, and exists in spite of efforts to the contrary, to the hazard and uncertainty of which no cause should be subjected (*People* agt. *Webb*, 1 *Hill*, 179; *People* agt. *Long Island R. R. Co.*, 16 *How.*, 106–111).

In the selection of a place of trial for this action other than that of Kings county, the fact that the plaintiff has already, by the service of an amended complaint, transferred it to the city of New York has not been overlooked. As already stated, such selection cannot influence this motion any more than an offer upon the argument to locate it there could do. When notice of the present motion was given the place of trial was Kings county. That motion could not be in any way prejudiced by the amended complaint. It gave to the court full discretion to fix the place of trial; and to allow the motion to be presented and argued as if the venue was now in the city and county of New York and the effect was to change it from that place to another, would be to give to the amended complaint a force which the section of the Code allowing it expressly forbids. When the law fairly commits a discretion to the court, neither party can, by his action, take it away, and for this reason the action of the plaintiff in amending his complaint cannot succeed.

In fixing a place of trial for this cause in some locality other

than the county of Kings, one manifest objection to New York exists in the fact that its courts are now burdened to an extent which makes the trial of this, if not impossible, at least unjust and unfair to other litigants. Whilst this action would be dragging its weary way for an indefinite period, interests involving millions would remain undisposed of. Issues actually arising in the great commercial metropolis, and which must be tried in its courts — vital, too, to parties — would tarry and wait for months, whilst one not arising therein, and properly triable elsewhere, was occupying the attention of its courts. This ought not to occur, and justice to others, if not to these parties themselves, who could only reach this cause in a very long period of time, must prevent the selection of New York as the place of trial.

Apart, however, from the reason just given, every argument against the county of Kings applies to New York. It is there where the great daily papers, which so largely give tone and color to public sentiment, are printed and published. The trial of this cause at that great center — more, even, than in Brooklyn — would draw and attract public attention and surround it with influences antagonistic to calm inquiry and judicial investigation. Here, too, are the very papers which the plaintiff chose as his spokesmen to the public. Its population is the very population which he addressed, whose opinions he sought to form and whose sentiment he sought to direct. Separated only by a river, with the residents of one very largely the business men of the other, with interests and business and social ties very closely intertwined, New York and Brooklyn make substantially a single community, and every argument against the one as the place of trial of this action, applies with equal force to the other, and hence the former cannot be chosen as the place of the trial for this action.

In changing the locality of trial it may cause inconvenience to witnesses to go into one of the rural counties, but I am also satisfied that very many who would be examined, were

Moulton agt. Beecher.

such trial either in New York or Brooklyn, can, without injury to the merits of the cause, be safely left at home. To every lawyer the fact is obvious, that trials are oftentimes uselessly protracted by the examination of witnesses whose evidence, which the court cannot legally exclude, weighs not a feather in the scales of justice. In a country circuit, with the cause stripped of unnecessary witnesses, the action could be readily disposed of in a few weeks, and thus great expense saved. It could be tried, too, before a jury intelligent and impartial, who, during such trial, would not be subjected to the influences which would focalize around one conducted upon the spot and scene of the transactions, and which influences exist amid that teeming population, continually stimulated by the appeals of partisans and of the daily newspapers, as they do nowhere else. There is no occasion, however, to subject parties and witnesses to useless inconvenience and expense by compelling them to attend at any extremity of the state. The New York daily papers circulate in Franklin county as well as in those more contiguous to the city. From my knowledge of the state, I incline to the opinion that the county of Delaware will afford as fair and impartial a trial as any other. That county is, therefore, fixed as the place of trial, subject, however, to the designation of some other, upon proof of any fact, now unknown to me, which renders the selection of some other more desirable. The attorneys of the defendant will prepare the proper order for settlement, and upon such settlement the suggestions of either party as to the place will be heard and determined.